IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Angela Hoyle, ) | C/A No. 0:13-3310-RMG-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, ) | |
| Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Angela Hoyle, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant has a "severe" impairment;
>
> (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4) whether the claimant can perform her past relevant work; and
>
> (5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In December 2011, Hoyle applied for DIB and SSI, alleging disability beginning January 1, 2009.[2] Hoyle's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 22, 2013, at which Hoyle, who was represented by Mark Dunning, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on June 21, 2013 denying benefits and concluding that Hoyle was not disabled. (Tr. 30-51.)

Hoyle was born in 1972 and was thirty-nine years old at the time of her amended alleged disability onset date. (Tr. 197.) She has a tenth grade education and past relevant work experience as an administrative assistant. (Tr. 246-47.) Hoyle alleged disability due to an injury to her pelvis. (Tr. 246.)

In applying the five-step sequential process, the ALJ found that Hoyle had not engaged in substantial gainful activity since September 1, 2011—her amended alleged onset date. The ALJ also determined that Hoyle's injury to the pelvis at age fifteen related to a motor vehicle accident, fracture of her right tibia, obesity, dysthymic disorder, opioid-induced mood disorder, post-traumatic stress disorder, and personality disorder were severe impairments. However, the ALJ found that Hoyle did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Hoyle retained the residual functional capacity to

> perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: never climb ladder/rope/scaffolds; occasionally bend, stoop,

---

[2] Hoyle later amended her alleged onset date to September 1, 2011.



> crouch, balance, and crawl; perform simple, repetitive [*sic*]; perform routine work with no ongoing public contact; and perform low-stress work, defined as having occasional changes in work settings or decision making.

(Tr. 37.) The ALJ found that Hoyle was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Hoyle could perform. Therefore, the ALJ found that Hoyle was not disabled from September 1, 2011 through the date of his decision.

Hoyle appealed the ALJ's decision to the Appeals Council, which denied her request for review on September 27, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Hoyle raises the following issues for this judicial review:

I.   Opinion evidence. The opinions of [] Dr. Leporowski, the Commissioner's own examining physician, contain work-preclusive limitations which the ALJ improperly ignored. Where the ALJ improperly ignores the opinion evidence, can his decision be supported by substantial evidence?

II.  The ALJ's decision must contain an evaluation of all of a claimant's impairments which are supported by the evidence in the case record. The ALJ failed to properly follow Social Security Ruling SSR 03-02p, which expressly explains how to evaluate claims involving RSD. When the ALJ fails to follow the Commissioner's own ruling by failing to properly evaluate all of Hoyle's impairments, can the ALJ's decision stand?

(Pl.'s Br., ECF No. 15.)

**DISCUSSION**

**A.   Residual Functional Capacity Assessment**

Hoyle argues that the ALJ failed to properly weigh the opinion of Dr. Deborah K. Leporowski, a psychologist who performed a mental consultative examination of Hoyle. Specifically, Hoyle first argues that although the ALJ stated that he assigned Dr. Leporowski's opinion significant weight, he failed to properly account for Dr. Leporowski's opinion that Hoyle had "marked" limitations in responding appropriately to usual work situations and to changes in a routine work setting. In support of this argument, Hoyle asserts that the vocational expert testified that if a person had marked limitations in this domain then it would preclude all work. However, the ALJ addressed this argument and found as follows:

> [A]t the hearing, the claimant's attorney asked the vocational expert (VE) an additional hypothetical question, to which the VE found that there is no work available with these additional restrictions. These limitations are based on the attorney's interpretation of Dr. Leporowski's opinion that the claimant has marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting (Ex.22F). The attorney stated that he interpreted "marked limitations" as, basically, not being able to perform. I find this argument

Page 5 of  12



> has little weight, as the form Dr. Leporowski used had a further limitation of "extreme." Therefore, if a "marked" limitation meant it precluded the claimant from that activity, what further limitation would exist? I find that my RFC limitation of perform low-stress work, defined as having occasional changes in work settings or decision making is the proper and appropriate RFC application of Dr. Leporowski's above opinion. Therefore, I find that there is no objective medical evidence as a basis for this additional limitation; therefore, it is not given any weight.

(Tr. 50.) As recognized by the ALJ, the form completed by Dr. Leporowski provided options for each activity ranging from "none" to "extreme," therefore undermining Hoyle's position that marked means that she would be completely precluded from performing that activity and her position that the vocational expert's testimony reveals that she is unable to perform any work activity. (See Tr. 603-05) (requesting that the doctor respond with the claimant's ability to perform each activity and defining the rating terms).

Hoyle also argues that the ALJ's consideration and interpretation of Dr. Leporowski's opinion that Hoyle had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting was insufficient. Hoyle asserts that "marked" does not mean "occasional" and therefore Hoyle's residual functional capacity is unsupported by substantial evidence. In support of this argument, Hoyle relies on Harris v. Astrue, Civil Action No. 1:11-CV-310-CSC, 2012 WL 3031257 (M.D. Ala. July 25, 2012).[3] In Harris, the ALJ afforded significant weight to a consultative examiner's opinion that, as here, included "marked" limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. In the hypothetical presented to the vocational expert, the ALJ excluded "significant"

---

[3] The form completed by the consultative psychologist in Harris, like the form completed by Dr. Leporowski, defined "marked" as a "serious limitation in this area. There is a substantial loss in the ability to effectively function." Compare Harris, 2012 WL 3031257, at *2 n.7 with (Tr. 603). Notably, the court in Harris stated that "plainly [such a limitation] does not 'preclude' all functioning in an area of concern." Harris, 2012 WL 3031257, at *3.

changes in a *routine work setting* as a condition under which the plaintiff would be working; however, the district court in Harris found that the ALJ "did not address the effect of a marked limitation in her *ability to respond appropriately to usual work situations*." Harris, 2012 WL 3031257, at *3 (emphasis added). Thus, the court in Harris found that the ALJ erred in failing to mention this inability in his hypothetical to the vocational expert. Unlike in Harris, the ALJ in this case found that Hoyle should be limited to the performance of low stress work, which he defined as having occasional changes in work settings or decision making, and found that these limitations were the proper application of Dr. Leporowski's opinion. Therefore, the court finds that Hoyle's reliance on Harris is misplaced and fails to support Hoyle's allegation of error. Furthermore, contrary to Hoyle's position, "other courts have found limitation of a claimant to occasional interaction with the public, coworkers, and supervisors to adequately reflect marked limitations in social functioning."[4] Davis v. Colvin, C/A No. 2:13-cv-00892, 2014 WL 3891643, at *5 (W.D. Pa. Aug. 7, 2014) (citing Schulte v. Colvin, No. 4:13-cv-01521, 2014 WL 1654129, at *5 (N.D. Ohio Apr. 24, 2014); Barker v. Colvin, C/A No. 13-cv-02156-RBJ, 2014 WL 2832753, at *9 (D. Col. June 23, 2014)).[5]

Hoyle also argues that the limitation in her residual functional capacity of "no ongoing public contact" is vague, and that Dr. Leporowski's findings that Hoyle had "decreased concentration and ability to think clearly and is easily distracted by anxiety, depression, fear, and pain, tearful,

---

[4] In Davis, the court noted that " '[o]ccasional' is generally defined in the social security context as occurring very little to no more than one third of the time. See SSR 83-10 at *5; SSR 85-15 at *7." Davis, 2014 WL 3891643, at *5 n.3.

[5] To the extent that Hoyle's arguments may be construed as arguing that SSR 85-15 requires a finding of disability where there is a substantial loss in the ability to respond appropriately to usual work situations and to deal with changes in a routine work setting, the court disagrees. While SSR 85-15 suggests that a finding of disability would be "justified" or "appropriate" in such circumstances, it does not require it. Moreover, the ALJ in this case relied on the testimony of a vocational expert.



hypervigilent, anxious, irritable, and likely to overreact" are wholly incompatible with the ALJ's residual functional capacity assessment. The court finds both of these arguments unavailing.

With regard to Hoyle's allegation that the ALJ's limitation of "no ongoing public contact" is vague, the court observes that during the hearing Hoyle's attorney began proposing a hypothetical question to the vocational expert with various limitations, one of which was amending the ALJ's hypothetical to just occasional contact with the public. The ALJ explained that his hypothetical question included "with no ongoing, you were saying occasional but that's even more, no ongoing public contact and low stress defined as only occasional change in work setting or decision making;" thus, the ALJ's hypothetical provided for very limited contact with the public. (Tr. 92.) Moreover, as a result of this discussion, the vocational expert amended her response to the earlier hypothetical question, stating that such a limitation would preclude the work with cashiering and offered an in-office job as a substitute for it. (Tr. 92-93.) Therefore, the court finds that remand is not warranted on this basis.

Additionally, in weighing Dr. Leporowski's opinion, the ALJ specifically stated that Dr. Leporowski "indicated that [Hoyle] exhibits decreased concentration and ability to think clearly and is easily distracted by anxiety, depression, fear, and pain. [Hoyle] is tearful, hypervigilent, anxious, irritable, and likely to overreact due to anxiety disorder." (Tr. 47.) As a result of these findings as well as others by Dr. Leporowski, the ALJ limited Hoyle to the performance of "simple, repetitive, and routine work with no ongoing public contact; perform low-stress work, defined as having occasional changes in work settings or decision making." (Tr. 48.) The court finds Hoyle's argument that these limitations are incompatible with the residual functional capacity assessment to be conclusory and without support, especially considering Dr. Leporowski's evaluation and findings

as a whole. Further, Hoyle's dispute with the ALJ's interpretation and application of Dr. Leporowski's opinions do not render the ALJ's opinion unsupported or controlled by an error of law.

Accordingly, Hoyle has failed to demonstrate that her residual functional capacity as determined by the ALJ is inconsistent with Dr. Leporowski's opinion or is otherwise unsupported by substantial evidence of controlled by an error of law.

**B.     Reflex Sympathetic Dystrophy Syndrome ("RSD")**

Hoyle also argues that the ALJ failed to evaluate her reflex sympathetic dystrophy syndrome pursuant to SSR 03-2p. However, fatal to Hoyle's argument is the lack of any credible evidence in the record that Hoyle had RSD during the relevant time period. Notwithstanding treatment and care from at least three sources, none of these sources definitively indicated that Hoyle suffers from RSD. In fact, a review of Hoyle's treatment records reflects that on December 14, 2012, Dr. Brian A.C. Weatherby indicated that Hoyle's "problem is not musculosketal but more a picture of what sounds like reflex sympathetic dystrophy status post traumatic event," which he discussed with Hoyle. Dr. Weatherby encouraged Hoyle to broach the topic of RSD with Dr. LeBlond or his physician assistant at her upcoming appointment, since she was already under Dr. LeBlond's care and he "would definitely be the expert in treating reflex sympathetic dystrophy." (Tr. 575.) On December 17, 2012, Dr. LeBlond's physician assistant, Christina Randall, PA-C, suggested that Hoyle begin taking Neurotin for "questionable diagnosis of RSD" and stated that Hoyle

> is very concerned that her disability hearing is coming up soon and no one seems to want to support her on it. She previously saw Dr. [Sara] Baird. Per Dr. LeBlond, we will refer her back to get another evaluation for disability as we will not be able to get her in to see Dr. LeBlond prior to her hearing. [Dr. LeBlond] is not familiar with her case at all and does not feel comfortable commenting on her level of disability.

(Tr. 627; compare Tr. 580-82 (consisting of an earlier version of this treatment note indicating "sign off status: Pending" rather than "Complete")). Finally, on December 20, 2012, Dr. Baird evaluated



Hoyle, observing that Randall was concerned about the possibility of RSD in Hoyle's leg. Dr. Baird stated that she could not say that Hoyle cannot do sedentary work and she felt that "with normal mandated work breaks [Hoyle] should be able to tolerate this type of work." (Tr. 571.) However, Dr. Baird stated that one caveat to her opinion "is the possibility that the patient may be developing RSD in her right leg. I am hopeful that this will not occur as this can be quit[e] debilitating. If she in fact develops a chronic RSD picture, this may make it more difficult for her to work due to a significant pain state. I feel that this would be best determined by the physicians who are treating her for this." (Id.) Since that time, the only other treatment record appearing to consider this condition only indicates "possible [complex regional pain syndrome] to the leg." (Tr. 611.)

Thus, the record before the ALJ showed that some medical providers hypothesized that Hoyle may suffer from RSD. Each referred her to another source for a diagnosis, which never occurred. Moreover, Hoyle has still not provided any medical records to the Appeals Council or to this court indicating that Dr. LeBlond, the specialist to whom other medical providers deferred, or any other medical source, ever opined that she had RSD. Thus, the court finds that no remand is warranted for an ALJ to further evaluate and discuss an alleged impairment that Hoyle's own treating sources have evaluated Hoyle for but been unable to diagnose during the relevant time period. See, e.g., Bishop v. Comm'r of Soc. Sec., No. 14-1042, 2014 WL 4347190, at *2 (4th Cir. Sept. 3, 2014) (applying the harmless error doctrine in the social security context and stating that "if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time' ") (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)).

*PJG*

**RECOMMENDATION**

For the foregoing reasons, the court finds that Hoyle has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____

November 19, 2014                                       Paige J. Gossett
Columbia, South Carolina                        UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).