## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Angela Hoyle,                              )
                                           )
    Plaintiff,                         )
                                           )     Civil Action No. 0:13-3310-RMG
    vs.                                )
                                           )
Carolyn W. Colvin, Commissioner            )
of Social Security,                        )     **ORDER**
                                           )
    Defendant.                         )
_____)

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Social Security Commissioner denying her claim for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b)

and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for

pre-trial handling. The Magistrate Judge issued a Report and Recommendation on November 19,

2014, recommending that the Commissioner's decision be affirmed. (Dkt. No. 22). Plaintiff

filed objections to the Report and Recommendation and the Commissioner filed a reply. (Dkt.

Nos. 24, 25). As more fully set forth below, the decision of the Commissioner is reversed and

remanded for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is

-1-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). This is not a particularly

burdensome showing by a claimant since even "a slight abnormality or a combination of slight abnormalities which would have more than a minimal effect on an individual's ability to work" satisfies this requirement. SSR 85-28, 1985 WL 568656 (1985). The Commissioner has the obligation as a threshold matter to address each impairment of the claimant and determine whether each impairment is severe or non-severe. *Solesbee v. Astrue*, C.A. No. 2:10-1882, 2011 WL 5101531 at *4-5 (D.S.C. 2011).

      If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination of whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Further, even if a claimant's condition does not meet all of the requirements of a listing, a claimant may be declared disabled at Step Three if she is able to show that another impairment or combination of impairments are the medical equivalent of the listed impairment. 42 U.S.C. § 423(c)(2)(b); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1526(b).

      If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and

-4-

extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Factual Background

Plaintiff was 39 years of age at the time she applied for Social Security disability benefits in December 2011. The record established that she suffered severe pelvic injuries when she was hit by an automobile when she was 15 years of age. As she aged, she began to complain of progressively worsening chronic pain in her lower back and legs. Transcript of Record ("Tr.") 411. Plaintiff reported that she had been forced to quit work because she was unable to stand or sit for prolonged periods of time. Tr. 486. This chronic pain was treated by her physicians with narcotic medications and injections. Tr. 406-7, 408-9, 411-13, 415-17, 418-19, 480-81.

Plaintiff suffered an additional orthopaedic injury from an accident in September 2012 in which she suffered a right tibia fracture. Tr. 543, 544-45, 548. As her injuries from this most recent orthopaedic trauma healed, Plaintiff began complaining of a new set of symptoms in her right lower extremity, including "a frostbite-type feeling across her entire distal extremity, foot and ankle, with fluctuations between hot and cold, numbness and tingling." Tr. 573. Plaintiff was examined by a board certified orthopaedist, Dr. Brian Weatherby, on December 14, 2012, who examined her right leg, foot and ankle. He confirmed that the right lower extremity had "moderate diffuse edema" and the "distal forefoot and toes do have a cooler, clammier feeling that the rest of her extremity." Tr. 575. Based upon this history and physical examination, Dr.

-5-

Weatherby diagnosed Plaintiff with reflex sympathetic dystrophy ("RSD")[1] and discussed with her various treatment options, including the prescribing of neuroleptics. Since Plaintiff was already under the care of a chronic pain specialist, Dr. Robert LeBlond, and his physician assistant, Christina Randall, Dr. Weatherby recommended that Plaintiff have the pain specialists treat her RSD. *Id.*

Several days later, Plaintiff followed up with Dr. LeBlond's physician's assistant, Ms. Randall, about Dr. Weatherby's diagnosis of RSD. Ms. Randall documented that Plaintiff's right lower extremity was swollen and had "purple color change." Tr. 580. While referring to RSD as a "questionable diagnosis," Ms. Randall prescribed treatment with Neurontin, explaining to Plaintiff that "RSD should be treated fairly aggressively in the beginning to hopefully reverse the nerve damage." Tr. 581. Plaintiff was seen by Dr. LeBlond several months later, on April 16, 2013, and reported that she had not been taking the Neurotin because she was unable to afford it. Tr. 611. Dr. LeBlond recommended she take the Neurotin as prescribed, and Plaintiff indicated that she had, in fact, just picked up the prescription. Tr. 75-76, 611-12.

Following an administrative hearing on April 22, 2013, an administrative law judge ("ALJ") issued a decision on June 21, 2013, finding that Plaintiff was not disabled under the Social Security Act. In reaching that conclusion, the ALJ found at Step Two of the sequential process that Plaintiff's severe impairments included pelvic injury at age 15, fracture of the right tibia, obesity, dysthymic disorder, opioid-induced mood disorder and post traumatic stress

---

[1] RSD is also known as "complex regional pain syndrome" or "CRPS". The Commissioner argues that Dr. Weatherby did not actually diagnose RSD but deferred the diagnosis to Plaintiff's pain specialist, Dr. LeBlond. Dkt. No. 25 at 7. However, a review of Dr. Weatherby's medical record indicates a definitive diagnosis of RSD that included a diagnostic code (337.20). Tr. 575.

disorder. Tr. 33. No reference was made in the ALJ's Step Two analysis to Plaintiff's diagnosis

of RSD. The ALJ then found at Step Three that Plaintiff had no impairment which satisfied any

Listing and at Step Four he concluded that she retained the residual functional capacity to

perform light work. Tr. 33-49. In reaching those conclusions, the ALJ gave little weight to

Plaintiff's treating physicians, including specialists in orthopaedics and pain medicine, and gave

"great weight" to two non-examining and non-treating physicians. Tr. 46-49. It is notable that

all of Plaintiff's treating providers assessed her as having far greater impairments than found by

the ALJ[2], and the opinions offered by the non-treating and non-examining physicians upon which

the ALJ so heavily relied were performed in early 2012 before Plaintiff's September 2012 tibia

fracture and December 2012 diagnosis of RSD. Tr. 130-42, 164-67, 440, 570-71, 573-576, 611-

12.

The ALJ gave "significant weight" to the opinions offered by an examining but not

treating psychologist, Dr. Deborah Leporowski, with the ALJ noting that she had the only

"comprehensive psychological evaluation in the record." Tr. 47-8. Dr. Leporowski found in her

evaluation that Plaintiff had a "marked" limitation in her ability to "respond appropriately to

usual work situations and to changes in a routine work setting." Tr. 604. The term "marked"

---

[2] Dr. LeBlond, a pain specialist, stated in an April 2013 office note that "[g]iven the crush injury to her pelvis with leg length discrepancy, possible [RSD] to the leg, I do not see her returning to work." He also observed that her physical impairments were complicated by her depression. Tr. 612. An earlier treating pain specialist, Dr. Sara Baird, opined that Plaintiff could perform sedentary work with the "caveat that if Plaintiff actually had RSD "this may make it more difficult to work due to a significant pain state" because RSD "can be quite debilitating." Tr. 571. The ALJ gave little to no weight to any of the evidence offered by these treating providers regarding the degree of Plaintiff's impairments. Tr. 46-49.

-7-

was defined on the form completed by Dr. Leporowski as constituting a "serious limitation" that results in "a substantial loss in the ability to effectively function." Tr. 603.

In the course of the hearing before the ALJ, a vocational expert was called and testified that based on the ALJ's hypothetical description of certain limitations on the claimant's ability to function, there were jobs in the national economy Plaintiff could perform. Tr. 89-93. This hypothetical propounded by the ALJ was, however, based on an apparent misreading of the form Dr. Leporowski had utilized, which the ALJ misread as referencing only "unusual" work situations. Tr. 92, 94. When Plaintiff's attorney noted the error by the ALJ and asked the vocational expert if there was a marked limitation on the ability to respond appropriately to "usual work situations" would that change his opinion, the vocational expert testified that if that were the case "that would preclude employment." Tr. 94. The exchange between the ALJ, Plaintiff's attorney and the vocational expert on this matter is, however, certainly confusing and was complicated by what was apparently a very poor copy of Dr. Leporowski's form at the hearing. Tr. 89-95. This issue is obviously not a small matter since the Commissioner has the burden of demonstrating the availability of a significant number jobs in the national economy for persons with Plaintiff's impairments. 20 C.F.R. § 404.1560(c)(2).

Following the ALJ's adverse decision and the denial of review by the Appeals Council, Plaintiff timely filed this appeal in the United States District Court challenging the Commissioner's denial to her of disability benefits.

## Discussion

### A.    The failure to evaluate RSD as a medically determinable impairment

The Commissioner is required at Step Two in the sequential analysis to address each impairment of the claimant and determine if it is a severe or non-severe impairment. Since RSD is often a notoriously difficult and elusive diagnosis to make, the Commissioner has adopted a specific set of rules associated with the evaluation and assessment of this condition. The Commissioner is required at Step Two to determine if RSD is a severe impairment if the condition is documented in the medical record. SSR 03-02P, 2003 WL 22399117 at *4 (2003). Among the signs and symptoms of RSD noted in the rule include the presence of chronic pain out of proportion to the injury and the presence of one or more signs in the affected extremity of swelling, changes in color, changes in texture, and/or changes in temperature. *Id.* If the claimant has evidence of a severe impairment of RSD, this must be identified at Step Two and then addressed throughout the sequential analysis.

In this particular matter, Plaintiff had a definitive diagnosis of RSD by a treating specialist physician, Dr. Weatherby, and clinical findings of severe pain and swelling in the affected extremity with changes in color, temperature and texture. Tr. 573, 575, 580. The ALJ's failure to address RSD at Step Two in the sequential process (and thereafter) is clear error that requires reversal and remand. The ALJ's passing reference to Dr. Weatherby's RSD diagnosis at Step Four clearly does not meet the requirements for evaluating RSD set forth in SSR 03-02P. Tr. 41.

### B.    Remand is necessary to clarify the opinion of the vocational expert

The Commissioner bears the burden of demonstrating the presence of a significant

-9-

number of jobs in the national economy which a person with Plaintiff's impairments can

perform. A vocational expert is often called to provide the necessary evidence to carry that

burden. In this matter, the testimony concerning whether Plaintiff's impairments do or do not

preclude employment is, quite frankly, a muddle. This confusion was produced by the ALJ

apparently misreading the form completed by Dr. Leporowski (whether her opinion of marked

limitations in responding to work situations applied to "usual" or "unusual" work situations) and

this produced what appears to have been two different opinions by the vocational expert. Tr. 91-

95. This was compounded by the use at the hearing of what apparently was an almost illegible

copy of the form in question. Tr. 94. The copy of the form in the Court's record is readily

readable and clearly states that the impairment addressed relates to "usual work situations and

changes in a routine work setting." Tr. 604.

The Commissioner has the duty to develop a "full and fair record" and to address any

deficiencies in the record so that "a just determination of disability can be made." *Milton v.

Schweiker*, 669 F.2d 554, 559 (8th Cir. 1982). In this case, the flawed and imprecise questioning

of the vocational expert, created from a misquoting of a record document, has left the Court

confused regarding the substance of the vocational expert's opinion. Reversal and remand are

necessary to allow the vocational expert to offer a clear opinion whether a "marked" impairment,

as defined by Dr. Leporowski's form, in the ability of the claimant to "respond appropriately to

usual work situations and to changes in routine work setting" would preclude employment.

## C.    The failure to properly apply the Treating Physician Rule

The Treating Physician Rule requires that *all* medical opinions be measured under the

standards of the Rule, which creates, when properly applied, a measure of preferential treatment

-10-

for the opinions of treating and examining physicians, particularly specialist physicians. 404.1527(c). It is notable in this case that the ALJ gave little weight to the opinions of Plaintiff's three treating specialist physicians, Drs. LeBlond, Baird and Weatherby. Tr. 41, 47-49. In evaluating the opinions of Drs. LeBlond and Baird, the ALJ made explicit reference to the Treating Physician Rule standards, noting for instance that Dr. LeBlond, while a treating physician, had rather limited treating contact with Plaintiff. Tr. 47-49. There was, however, no explicit weighing of the opinions of Dr. Weatherby under the standards of the Treating Physician Rule or any other standard. Tr. 41. The ALJ gave "great weight" to the opinions of two non-treating and non-examining physicians, Dr. Clarke and Dr. Hopkins, but did not evaluate their opinions, as required, under the standards of the Treating Physician Rule. Tr. 46. For instance, it was not noted that their opinions were rendered in early 2012, before the claimant's tibia fracture and resulting diagnosis of RSD, raising a question whether they considered all of the "pertinent evidence". Tr. 130-42, 164-67; § 404.1527(c)(3), (5). On remand, all expert medical opinions should be evaluated under the standards of the Treating Physician Rule.

## Conclusion

The decision of the Commissioner is reversed pursuant to 42 U.S.C. § 405(g) and remanded to the agency for further action consistent with this order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
December 1, 2014

-11-